UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **RANDY LEE BATISTE** | **CIVIL ACTION NO. 07-0258** |
| **VS.** | **SECTION P** |
| **CALDWELL CORRECTIONS CENTER ET AL.** | **JUDGE JAMES** <br> **MAGISTRATE JUDGE HAYES** |

**REPORT AND RECOMMENDATION**

Before the court are a civil rights complaint (42 U.S.C. §1983) and associated pleadings filed in forma pauperis by *pro se* plaintiff Randy Lee Batiste during the months of February and March 2007. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the Richland Parish Detention Center, Rayville, Louisiana; however, he complains of incidents occurring while he was incarcerated at the Caldwell Correctional Center (CCC) in Grayson, Louisiana, during October 2006. Plaintiff named CCC Warden Chris Fredricks, Lt. Bobby Ray Kelly, Corrections Officer Bobby Mercer, and Sergeant Wendell Davis as defendants. He prays for $1 million in damages and for commutation of his sentence or clemency. Plaintiff also seeks an emergency transfer and the appointment of counsel.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint and associated pleadings and requests be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

1

*Statement of the Case*

*1. Original Complaint*

On October 20, 2006, plaintiff was incarcerated in Dorm C at the CCC. On that date, the defendants entered the dormitory, ordered all inmates to unlock their lockers, and then ordered the inmates to leave the building.

Approximately two hours later, the inmates were allowed to return. Upon his return, plaintiff noticed that his personal property including his legal papers had been searched. Upon closer inspection, plaintiff discovered that some of his legal papers had been seized.

According to plaintiff, he is serving a ten year sentence. For the past 2 ½ years he has conducted legal research and has prepared Motions, Post-Conviction Applications, Habeas Corpus Petitions and briefs in an effort to "get back in Court." (Plaintiff believes that his chances "... on getting my conviction reverse or sentence modified was very great..." had plaintiff "... been allowed to proceed with [his] Due Process.") However, during the search all of his "legal research, legal letters, legal documents, legal motions, copies, cited cases, and briefing was seized." According to plaintiff these documents "... possibly could have made a differen[ce] in the outcome of [his] collateral attack ..."

On October 23, 2006, a different group of prison guards returned some but not all of plaintiff's legal papers, and none that were returned were of value to plaintiff's collateral attack.

According to plaintiff, he has written formal requests for the return of his papers and in addition he has submitted three Administrative Remedies Procedure (ARP) grievances, including

2

one addressed to LDOC Secretary Stalder, seeking the return of his papers. However, he has not received a response to his ARPs.

## 2. *First Emergency Transfer Request*

On February 20, 2007, plaintiff submitted an "Inmate Emergency Transfer Request." Plaintiff wrote, "This is not a Motion, but a letter of a Life Threatening Situation." He further alleged, "I feel that my life and sanity is in great danger since I've filed a Civil Action against this facility. The Warden Cris Fredrick ... call me to his office, began screaming and shouting at me for filing suit. Also shouting that I should never write a request... I fear for my life. Mentally I feel that harm may come to me at any time. I can't sleep at night and I'm afraid to eat the meals that they serve me." [doc. 6]

On February 22, 2007, United States District Judge Robert G. James filed a minute entry into the court records which noted, "... despite the title of the letter, Plaintiff states that it 'is not a Motion.' Plaintiff's letter does not provide any facts indicating that he is in a life-threatening situation, and he does not request any relief from the Court. For these reasons, the Clerk of Court is instructed to terminate the motion. <u>If Plaintiff believes that he is truly in a life-threatening situation and desires action by the Court, he must file a motion and provide facts supporting his claim.</u>" [doc. 8, emphasis supplied]

## 3. *Motion for Inmate Emergency Transfer/Relief Request*

On March 6, 2007, plaintiff filed "Motion for Inmate Emergency Transfer/Relief Request." The Motion was dated March 3, 2007. Among other things, plaintiff stated, "After the Warden found out about the Civil Action the Warden approached plaintiff stating that if I the plaintiff did not drop the suit, something bad would happen to me the plaintiff. The plaintiff

3

believe this to be a threat against his life.  Plaintiff has been trying to get transferred to southeastern Louisiana D.O.C. institution, where plaintiff would be close to home and feel much safer...  Now several of the guards here have stated to I the plaintiff to be very careful and stay out of the warden's presents and to watch my steps, also try not to get any write ups that would take me out of the dorm from around other inmates. Because if I the plaintiff was to get put in the 'hole' Solitary Confinement alone, my life would be in great danger.  There has been others that was killed here at this facility and the murder was covered up. These are some of the reasons why I the plaintiff fear for my life." [doc. 10]

### *4. Notice of Change of Address*

In a letter dated March 8, 2007, and received on March 12, 2007, plaintiff advised the Clerk of Court of his transfer to the Richland Parish Detention Center, Rayville, Louisiana. [doc. 13]  On the same date he submitted a second letter addressed to the Court advising that he was still fearful "... because the transfer was ordered by someone who has threaten me..." He further alleged that the Warden transferred plaintiff "... further away from home to a place that's for the worst inmates are house..." [doc. 14]

### *5. Motion for Appointment of Counsel*

On March 20, 2007, plaintiff filed a Motion requesting appointment of counsel to assist him with the instant litigation. [doc. 18]

### *6. Letter to the Clerk*

On March 20, 2007, plaintiff submitted another letter to the Clerk of Court requesting information on the status of his pending motions. [doc. 19]

### *7. Declaration of Oris A. Lee*

On the same date plaintiff submitted a document purporting to be the declaration of an inmate named Oris A. Lee. According to the declaration, Lee witnessed the seizure of plaintiff's legal documents on October 20, 2006, while he and plaintiff were incarcerated at CCC. [doc. 20] At the time of the filing, Lee was also incarcerated at the Richland Parish Detention Center.

### 8. Motion for Summary Judgment

On the same date, plaintiff submitted a Motion for Summary Judgment. Plaintiff attached documents purporting to be the inmate grievances submitted by a CCC inmate named Stephen Creer. These ARP's grieved the seizure of legal papers during the October 20, 2006, shake-down of Dorm C. Plaintiff also attached a document purporting to be the CCC Warden's response to Creer's ARP. [doc. 22]

### 9. Letter to Clerk of Court

On March 27, 2007, plaintiff submitted another letter to the Clerk of Court requesting information on the status of previously filed motions. [doc. 23]

### 10. In forma pauperis Information

On March 30, 2007, plaintiff submitted a letter to the Clerk providing information on plaintiff's attempts to obtain *in forma pauperis* status. [doc. 24]

*Law and Analysis*

### 1. Appointment of Counsel

Plaintiff moves for appointment of counsel to assist him in this litigation. Initially, the undersigned notes that plaintiff is proceeding in *forma pauperis.* A review of the pleadings supports a finding that he should be considered indigent for the purposes of this evaluation. Nevertheless, for the following reasons plaintiff's motion for appointment of

5

counsel should be denied.

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to <u>request</u> that an attorney represent an indigent plaintiff. (In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.)

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982); *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989); *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985)("Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present.")

No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in making this determination. For example, the court should consider (1) the type and complexity of the case; (2) the plaintiff's ability to adequately present and investigate his case; (3) the presence of evidence which largely consists of conflicting testimony so as to

require skill in presentation of evidence and cross-examination; and (4) the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf because plaintiffs are not excused from making efforts to procure counsel on their own. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213.

Plaintiff has managed to file his original complaint as well as a series of motions and letters associated with the complaint. In essence, he complains that the defendants have unlawfully deprived him of certain items of personal property (i.e. legal documents) and have thus interfered with his Constitutionally guaranteed right of access to the court. This claim is not necessarily atypical of those often asserted in civil rights litigation and is not complex. Plaintiff has first hand knowledge of the facts which form the basis of this action and needs no assistance in recounting those facts to the court. As is shown below, plaintiff has presented all of the facts necessary to make an informed decision on the merits of his claim.

Further, at this stage of the proceedings it is assumed that plaintiff's factual allegations are true and therefore plaintiff has no need of an advocate skilled in the art of cross-examination. Additionally, since plaintiff's claims are susceptible of resolution on

initial review, counsel will not assist the court in shortening or simplifying the proceedings.

Finally, plaintiff has failed to demonstrate that he has exhausted all attempts to procure counsel on his own behalf. Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel.

## *2. Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint

as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). In addition, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint, together with the motions, exhibits, and letters to the court provide the specifics of his theory of liability with respect to the defendants. Plaintiff's complaint alleges that the seizure of various unspecified legal documents by the defendants interfered with plaintiff's right of access to the courts. Accepting all of plaintiff's allegations as true, the undesigned concludes, for the reasons stated hereinafter, that his complaint is frivolous and should be dismissed.

### 3. *Parratt/Hudson Doctrine*

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional

violation has been alleged, there is no cognizable claim under §1983.

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amendment XIV. However, the jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under §1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913. The Due Process Clause does not embrace tort law concepts. *Id.* Although a prisoner may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford the prisoner a remedy. *Daniels v. Williams,* 474 U.S. 327, 325, 106 S.Ct. 662 at 667, 88 L.Ed.2d 662 (1986).

Even in instances where intentional deprivation occurs, as is apparently the case here, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a

deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that a random and unauthorized deprivation occurred when plaintiff's legal file was confiscated by a prison official. If adequate state law remedies are available, no further due process is required under the Constitution.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort committed by employees of the prison facility. See, La. Civil Code, art. 2315. This provision of state law which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine. Unless plaintiff can show that the defendants violated his constitutional rights, plaintiff's claim is not a cognizable claim under §1983. Therefore, the court concludes that plaintiff's claim is frivolous. See 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

### *4. Access to the Courts*

That does not end the inquiry, however, because plaintiff argues that the defendants' actions denied him access to the courts. The right of access to the courts assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir.1997). In essence,

plaintiff contends that the actions of the defendants interfered with his ability to collaterally attack his Louisiana conviction. Assuming for the purposes of this Report that plaintiff has shown that the defendants interfered with his constitutional right to access the courts[1], in order to prevail, he must also allege facts to establish that he suffered some prejudice as a result of the deprivation. That requirement has long been established by Supreme Court and Fifth Circuit jurisprudence. See *Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988).

Plaintiff's claims of prejudice are simply insufficient to state a claim for which relief may be granted. For example, in his original complaint, plaintiff alleged

> I was sentenced to serve a 10 flat years. Now for 2 ½ years (about) I have been researching a lot of cited cases, and writing motions, post-convictions, habeas corpus, briefing pertaining to my case trying to get back in court. I believe my chances on getting my conviction reverse or sentence modified was very great if I could have been allowed to proceed with my Due Process. During the search on 10-20-06 all of my research, legal letters, legal documents, legal motions, copies, cited cases, and briefing was seized. These legal materials <u>possibly could have made a difference</u> in the outcome of my collateral attack of the 10 year conviction that I have. [doc. 1-1, p. 4]

Elsewhere plaintiff alleged,

> After three days had passed, only seven pieces of legal documents were returned, but not the much needed legal material, that maybe <u>could have reversed</u> plaintiff's

---

[1] Plaintiff claims that his legal research and copies of various (although unspecified) documents related to his conviction were seized by the defendants during the October 20, 2006 search; and, while some of the material was returned, "the much needed legal material" was not. [doc. 1-1, p. 4; doc. 10, p. 3] The exhibits plaintiff supplied in support of his Motion for Summary Judgment [doc. 22] indicate that the prison authorities seized only contraband and all non-contraband items that were inadvertently seized were ultimately returned to the owner of the property. Nevertheless, for the purpose of this Report, it is assumed that plaintiff's allegations are true and that certain unspecified legal documents were wrongfully seized on October 20, 2006.

> conviction ... [doc. 10, p. 3]

In the declaration of inmate Oris A. Lee submitted by plaintiff on March 20, 2007, inmate Lee alleged,

> I had recently talked with Mr. Batiste while he had all that legal papers on his bed that day 10-20-2006 he stated that he was working on his case and that the work he was doing that day 10-20-2006 was going to get him back in court and <u>maybe the judge may reverse his conviction</u> and send Mr. Batiste home. [doc. 20, p. 2]

In other words, plaintiff's pleadings simply do not demonstrate that the loss of the documents in question caused any prejudice. Further, court records from the United States District Court for the Eastern District of Louisiana tend to establish that no prejudice resulted from the loss of destruction of plaintiff's legal documents.

The records of that court reveal that on May 5, 2006, plaintiff filed a petition for *habeas corpus* collaterally attacking his Louisiana conviction for second offense possession of cocaine. See *Randy Lee Batiste v. State of Louisiana*, No. 2:06-cv-2331 (E.D.La.) at doc. 1. According to the petition, plaintiff entered into a plea agreement and pled guilty to possession of cocaine second offense on January 27, 2005; on February 1, 2005, he was sentenced to serve ten years imprisonment in accordance with the agreement. His federal *habeas corpus* petition argued six claims for relief: (1) ineffective assistance of counsel; (2) wrongful denial of a continuance; (3) denial of petitioner's motion to recuse the District Attorney; (4) denial of due process; (5) unconstitutional search and seizure; and (6) excessive sentence. [*id.*]

On September 5, 2006, United States Magistrate Judge Sally Shushan recommended dismissal of the petition without prejudice because petitioner, by his own admission, had failed

to exhaust available state court remedies. See *Randy Lee Batiste v. State of Louisiana*, No. 2:06-cv-2331 (E.D.La.) at doc. 12. On September 15, 2006, petitioner timely objected and in his objection made the following claims,

> Petitioner has limited knowledge of the law, now after petitioner post conviction relief was denied without a hearing or/and no reason to why it was denied on January 24, 2006 by the 22nd district court. The attachment of petitioner memorandum in support of his post conviction was not returned to him, along with the post conviction document, police reports, statements of facts, and other legal documents, these document was the only copys [sic] left. Due to Hurricane Katrina and Hurricane Rita and petitioner being transferred from one prison to another now due to the emergency over crowding of prisons. Petitioner's property and personal mail including a copy of court documents was miss handle and losted. [sic] So petitioner filed a motion asking for the attached document that was on the post conviction. This was February 8, 2006, now 45 days later I received the attached document. The 30 day to file for review of the post conviction had expired. If the petitioner would have filed a motion to review to the 1st Cir of Appeal Court, it would have been untimely filed and denied. Therefore petitioner had exhausted his remedies in state court. [See *Randy Lee Batiste v. State of Louisiana*, No. 2:06-cv-2331 (E.D.La.) at doc. 13]

Notwithstanding his objection, United States District Judge Jay C. Zainey accepted and adopted the reasoning of the Report and Recommendation and entered judgment dismissing plaintiff's claims as unexhausted. [See *Randy Lee Batiste v. State of Louisiana*, No. 2:06-cv-2331 (E.D.La.) at doc. 14 and 15] Plaintiff appealed [*id.*, at doc. 16]; however, a Certificate of Appealability was denied by Judge Zainey. [*id.*, at doc. 17] Petitioner's appeal was lodged in the Fifth Circuit and remains pending. [id., at doc. 19; see also United States Fifth Circuit Court of Appeals PACER entry at *Batiste v. State of Louisiana*, No. 06-31031.]

On November 13, 2006, plaintiff returned to the Eastern District Court and filed a Motion for Documents requesting "... all pleadings, briefs, memoranda and other documents filed in connection with any application for state post conviction relief or federal habeas corpus under 28

14

U.S.C. §2254..." [See *Randy Lee Batiste v. State of Louisiana*, No. 2:06-cv-2331 (E.D.La.) at doc. 20] In that motion plaintiff claimed that ALL of his legal documents had been seized and destroyed during the October 20, 2006, search and that plaintiff was in need of these documents "... to file my appeal..." [*id*., at p. 1]

While plaintiff has not specified the nature of the prejudice he claims to have suffered as a result of the loss of his "legal papers," the foregoing motion suggests that the only prejudice he can claim is some as yet unspecified claim concerning his ability to appeal the Eastern District's denial of his §2254 petition.  As shown above, plaintiff's *habeas* was dismissed because, by his own admission, plaintiff failed to exhaust available state court remedies. This fact was also confirmed by independent research conducted by the Magistrate Judge's chambers. See *Randy Lee Batiste v. State of Louisiana*, No. 2:06-cv-2331 (E.D.La.) at doc. 12;  In recommending dismissal, Magistrate Judge Shushan noted,

> Pursuant to 28 U.S.C. §2254(b)(1)(A), a petitioner must normally first exhaust his remedies in state court before seeking habeas corpus relief from the federal courts. 'To exhaust a petitioner must have fairly presented the substance of his claim to the state court.' *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules. *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).
>
> Petitioner does not indicate in his federal application that he sought review of his claims by the Louisiana Supreme Court. Moreover, in a subsequent filing, he in fact acknowledges that he failed to exhaust his state court remedies. Additionally, a staff member of this Court contacted the Louisiana Supreme Court's Office of the Clerk of Court by telephone on August 31, 2006, and was informed that the court's computerized database showed no writ applications of any kind had been filed by petitioner in that court. Therefore, the state is correct in arguing that petitioner's federal application is subject to dismissal on the ground that he failed to exhaust his state court remedies as required prior to seeking relief in federal court. [*id*.]

Magistrate Judge Shushan's findings of fact appear to be supported by the record. Plaintiff did in fact concede that he failed to exhaust state court remedies. See *Randy Lee Batiste v. State of Louisiana*, No. 2:06-cv-2331 (E.D.La.) at doc. 6 wherein plaintiff stated, "I Randy L. Batiste is writing this letter to the Magistrate Judge Ms. Sally Shushan, asking if the court will except [sic] my apology. First for not researching more about the law. Second for my handwriting and spelling. Third for not exhausting all state remedies."

In other words, it is impossible to conceive how plaintiff has been prejudiced by the loss of his legal papers. His appeal to the Fifth Circuit must, by law, be confined to issues litigated in the District Court and specified in his request for a COA. See Federal Rule of Appellate Procedure 22(b); *Brewer v. Quarterman*, 466 F.3d 344, 346 (5th Cir. 2006). The District Court dismissed plaintiff's *habeas* because he failed to exhaust available state court remedies and denied his non-specific request for COA for the same reason. [See *Randy Lee Batiste v. State of Louisiana*, No. 2:06-cv-2331 (E.D.La.) at docs . 16-17] Thus, plaintiff's appeal to the Fifth Circuit, must, by definition, be limited to the issue of whether he exhausted available state court remedies. The record clearly establishes that he did not and therefore, even if his legal documents were lost, he cannot show prejudice.

Further, to the extent that plaintiff might suggest that owing to the loss of his papers he is now prevented from litigating further collateral attacks, such a claim is likewise without merit. Magistrate Judge Shushan calculated that plaintiff had approximately eleven days of the one-year AEDPA limitations period remaining when he filed his federal petition in the Eastern District of Louisiana. [See *Randy Lee Batiste v. State of Louisiana*, No. 2:06-cv-2331 (E.D.La.) at doc. 12,

pp. 5-6, "... after three hundred nineteen (319) days of his one-year period had elapsed, petitioner did toll the statute of limitations by filing his state post-conviction application on January 17, 2006. Although that application was denied on January 24, 2006, tolling continued until February 23, 2006, when his thirty-day period expired for seeking review of the trial court's denial by filing a writ application with the intermediate appellate court. See *Melancon v. Kaylo*, 259 F.3d 401, 404-06 (5th Cir. 2001); Louisiana Uniform Rules of the Courts of Appeal Rule 4-3. At that point, petitioner had forty-six (46) days of the statute of limitations remaining. Because his federal application was filed thirty-five (35) days later on March 30, 2006, it was timely filed."] However, the filing and pendency of that federal *habeas corpus* petition did not toll the remaining eleven days of petitioner's AEDPA limitations period [*Duncan v. Walker*, 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)] and therefore, any future petition for *habeas corpus* would be subject to dismissal as time-barred by the provisions of 28 U.S.C. §2244(d). Since it is clear that plaintiff cannot demonstrate prejudice resulting from the alleged loss of his legal documents, his claim must be dismissed as frivolous.

### 5. Remaining Motions

Plaintiff's "Motion for Inmate Emergency Transfer/Relief Request" dated March 3, 2007, was filed on March 6, 2007 while plaintiff was still incarcerated at CCC. [doc. 10] In a letter dated March 8, 2007 which was received on March 12, 2007, plaintiff confirmed that he had been transferred to the RPDC. [doc. 13] Nevertheless, plaintiff still voiced fears "... because the transfer was ordered by someone [CCC's Warden] who has threaten me..." [doc. 14]

Plaintiff's Motion for Emergency Transfer is clearly moot in light of his subsequent transfer to RPDC; his continued fears of reprisal at that facility are not supported by any facts.

17

Judge James has previously advised plaintiff that any motion seeking transfer "... must provide facts supporting [the] claim..." [doc. 8] Therefore, plaintiff's Motion for Inmate Emergency Transfer [docs 10 and 14] must be denied.

Plaintiff's Motion for Summary Judgment [doc. 22] was filed while plaintiff's complaint was still under initial review as provided by 28 U.S.C. §§1915 and 1915A. It should be dismissed as premature and additionally for the same reasons set forth in Sections 3 and 4, *supra*.

Accordingly,

Plaintiff's Motion for Appointment of Counsel [doc. 18] is **DENIED;**

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii);

**IT IS FURTHER RECOMMENDED** that plaintiff's Motion for Summary Judgment [doc. 22] be **DENIED;** and,

**IT IS FURTHER RECOMMENDED** that plaintiff's Motions for Inmate Emergency Transfer/Relief Request [doc. 10; doc. 14] be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b),**

**shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

   **THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 4th day of April, 2007.

                _____
                KAREN L. HAYES
                U. S. MAGISTRATE JUDGE